BROWN et al. v. SKEEN et al.

No. 5632. Decided May 23, 1936. (58 P. [2d] 24.)

*Skeen & Skeen,* of Salt Lake City, for appellants.

*Thatcher & Young,* of Ogden, for respondents.

MOFFAT, Justice.

We shall make a detailed statement of the facts and issues in the hope that such may tend to clarify the issues presented and the errors assigned, and thereby aid in the discussion of issues raised. The case is in equity and was tried to the court without a jury. The appeal is by Joseph Skeen, Lenora Freestone, J. D. Skeen, Charles Skeen, Electa Skeen Johnson, W. R. Skeen, Jennie Cook, Elwood Skeen, and Henry T. Maw, administrator of the estate of Lyman Skeen, deceased. The other defendants have not appealed. It is from a decree entered in favor of the plaintiffs and respondents in which it was decreed that plaintiff Mary Rawson Brown is entitled to a judgment against Henry T. Maw, as administrator of the estate of Lyman Skeen, deceased, in the sum of $9,487.37, and that plaintiff David A. Skeen is

entitled to judgment against said administrator in the sum of $1,250.98; that the whole of said sums with the costs of court are valid liens against the lands, premises, and property described in the decree; that the sums are secured by the terms of a declaration of trust which by the trial court, in connection with the deeds to the property referred to, were construed to constitute a mortgage, and gave priority to the lien so found to exist prior to any claims of the defendants, subject to redemption rights, and providing that if any sum should remain after the sale of the property and after payment of the sums due to plaintiffs, such sum should be distributed to the heirs of Lyman Skeen per stirpes.

It is alleged that on February 16, 1927, Lyman Skeen and his wife, in the complaint generally referred to as the "trustors," were the owners of certain property fully described in the complaint which they deeded to David A. Skeen and Mary E. Rawson Brown, formerly Mary E. Rawson, referred to as "trustees." The deed described six tracts of land located in sections 31 and 32, township 7 north, range 2 west, Salt Lake Base and Meridian, and was recorded March 2, 1927, in the records of Weber county, Utah. On the same day the "trustees" made a written declaration of trust, the terms of which were agreed to by the "trustors." The declaration of trust was recorded June 10, 1930. On August 15, 1927, the trustees conveyed back to the trustors two of the six tracts of land previously conveyed. On February 1, 1928, the trustors, for a consideration of $8,000, mortgaged to the state of Utah these two tracts of land, together with two other tracts. On February 3, 1928, trustors conveyed back to the trustees all of the land included in the mortgage to the state so that the trustees received title to all of the land previously conveyed as well as the two additional tracts. It appears these conveyances covered all of the lands owned by the trustors, also that the mortgage made to the state of Utah for $8,000 was to pay an existing indebtedness to the National Bank of Commerce, which is

referred to in the "declaration of trust." The declaration of trust provides:

"That David A. Skeen and Mary E. Rawson of Salt Lake City, Utah and Ogden, Utah, respectively, hereinafter called Trustees, do hereby admit, certify and declare that there has been conveyed to them by Lyman Skeen and Annie Skeen, his wife, of Plain City, Weber County, State of Utah, hereinafter called the Trustors, by deeds absolute in form, those certain lots, pieces or parcels of real property hereinafter described.

"That the said real property has been accepted and will be held by said David A. Skeen and Mary E. Rawson upon the Trust's terms and conditions and for the purpose hereinafter set forth, to and until the demise of said Trustors or until the whole of the Trust Estate is conveyed, free from this Trust, as hereinafter provided, whichever event may happen first.

"That the Trustors represent to the Trustees herein that they are desirous of settling the taxes and assessments now standing against the property; that they also wish to make payment of the encumbrances due on said property in order to preserve the equities which now exist therein and to secure the amount they now owe the said trustees; and that they further desire to have the property maintained, taxes, insurance, upkeep, etc., paid as they become due, together with the interest upon the indebtedness now standing against the property.

"Therefore they request the Trustees to accept title to the property hereinafter described, for and in consideration that the Trustees will, and they are hereby authorized and requested to make all such payments necessary, viz.: *to pay all interest and all taxes and assessments both general and special now standing against the property* as above set out. Further that said Trustees are authorized to pay all necessary expenses for the maintenance of said property and all general and special taxes hereafter assessed against the Trust property. * * *" (The property is then described.)

"And it is specifically agreed that the terms, provisions and conditions of this trust agreement shall apply as to all other property, real and personal, conveyed or assigned by the Trustors herein to and received and accepted by the Trustees herein.

"The encumbrances known to exist against the property, or/and owing by the Trustors herein at this date, are as follows:

"Note favor of National Bank of Commerce, Ogden, Utah, secured by first mortgage on part of the above mentioned real property ......................................... $ 8,000.00

"Note to Ogden State Bank, Ogden, Utah, for ............... 825.00

"Due to David A. Skeen on open account for cash heretofore advanced in the sum of ............................. 836.30

"Due to Mary E. Rawson on open account for cash heretofore advanced in the sum of ........................ 331.25

"Total due, aggregating ......................... $10,092.55

"together with unpaid taxes and costs for the year 1926, approximately $435.75, all of which amounts the Trustors acknowledge and certify to be due upon this date, to-wit, February 16, 1927, to which amount there shall be added any and all additional payments hereafter made by the Trustees from time to time in payment of all premiums for insurance on said property, and any Inheritance, Income, or other Tax, General or Special hereafter levied, with interest on all of said amounts so advanced at the rate of seven (7) per cent per annum, from date of such advancement to date of repayment shall constitute a first lien on the property covered hereby in favor of the Trustees, subject only to encumbrance of record.

"The said Trustees are authorized to pay all special assessments, taxes, interest and costs now due or hereafter to become due, and all general and special taxes hereafter assessed against the real property conveyed to it as above described.

"During the term of this Trust said Trustors have reserved, and it is an express term and provision of this Trust, that they shall be allowed to continue in full, free and undisturbed possession of the Whole Trust Estate, without any rental or accounting therefor, to said Trustee or any of the other beneficiaries under this Trust; but they shall not incur any liabilities in connection therewith for which the Trustees may become legally chargeable; provided, that at the written request of Trustors, Trustees will handle the leasing or renting of any part of said property and collecting all rentals thereon.

"That the amount of encumbrance, taxes, costs, interest, etc., against the property and owing by the Trustors as hereinabove set out at this time are large in comparison to the real value of said property and the taxes, insurance and interest which will accrue annually hereafter may materially add to the present amount."

Other and further detailed provisions are contained in the declaration of trust which need not be repeated here.

The document is signed by the trustees and trustors, accepting, agreeing, and consenting to, approving, and ratifying the same. Further allegations as to accounts, payments, decease of the trustors, names and relationships of parties, necessity for corrections and amendments, with a detailed prayer for relief, are made. The complaint, demurrers, answers, and reply make up the pleadings and issues. Stipulations were made as to attorneys' fees and scope and application of exceptions taken to evidence offered. Default of certain defendants was entered.

Numerous errors are assigned, but upon argument and submission they are all grouped into six errors. They are stated by appellants as follows:

"1. The court erred in overruling defendants' objection to the introduction of any evidence upon the ground that the Amended Complaint did not state facts sufficient to constitute a cause of action.

"2. The court erred in admitting testimony of Mrs. Brown, one of the plaintiffs, as to the delivery of the checks included in Exhibit 'B' and as to the purpose for which they were delivered.

"3. The court erred in receiving in evidence the checks and receipts included in Exhibit 'B' and the typewritten statement of account Exhibit 'D'.

"4. It was reversible error to receive in evidence the 'ledger' (unmarked for identification) and to admit Mrs. Brown's testimony as to the entries.

"5. The court erred in denying defendants' Motion for a Judgment of Non-suit.

"6. The court erred in making certain Findings of Fact, Conclusions of Law and the Decree."

Appellants contend that the complaint as amended does not state facts sufficient to constitute a cause of action, not because the allegations would be insufficient in the absence of the administrator-defendant, but because the complaint as amended contains no allegation that before the suit was filed the claim was presented to the administrator. The record discloses that suit to declare the deeds and declaration of trust a mortgage and to foreclose as such was begun before the appointment of an adminis-

trator.   Before trial, the administrator was appointed,
served with a verified copy of the complaint as amended,
and made a party to the action.

We are of opinion the complaint as amended states a
cause of action.   As to that point, appellants must fail.   In
the case of *Clayton* v. *Dinwoodey*, 33 Utah 251, 93 P. 723,
14 Ann. Cas. 726, the particular question applicable to the
situation here presented was determined.   That case states
the law of this state on the matter before us, at page 264 of
33 Utah, at page 728 of 93 P., as follows:

"Had the claim here been barred by the general statute of limi-
tations, or by the special statute, such as where a claim had been
presented and rejected by the executors and suit was not commenced
within the time provided by the statute, or where no claim had been
presented nor suit commenced within the time in which a claim could
have been properly presented, the bar of the statute would be a com-
plete defense.   But where the suit is commenced under the circum-
stances heretofore shown, the commencement of the suit operates as a
presentation of the claim.   In such case, if the executor or admini-
strator, on investigation, finds the claim to be just, and determines
that it ought to be paid by the estate, he may confess the demand
within the time in which he is required to appear in the action and
plead to the merits, and, if he does so, there should be no judgment
for costs.   If, however, issues are joined as to the merits of the claim
and material allegations with respect thereto are denied, and the
plaintiff is put upon his proof to establish his claim, then costs
should follow as though suit had been brought on a rejected claim.
The plaintiff having commenced the action within the time in which
a claim could have been presented, before giving the executors an
opportunity to pass on the claim, the action at most was only prema-
turely brought.   A premature institution of a suit may be ground
for a plea in abatement, which, if interposed, has the effect to de-
feat or suspend the suit for the time being; but it is not ground for a
plea in bar, and cannot have the effect to impair or defeat the action
altogether.   *Giboney* v. *German Ins. Co.*, 48 Mo. App. 185; *Collette* v.
*Weed*, 68 Wis. 428, 32 N. W. 753; *Moore* v. *Sargent*, 112 Ind. 484,
14 N. E. 466."

The errors assigned and argued under the stated issues
numbered 2, 3, and 4 above relate to the admissibility of
certain evidence of one of the plaintiffs, Mary E. Rawson

Brown, particularly in admitting in evidence certain checks and receipts and a statement of account, the admission of which appellants contend violated the provisions of 104-49-2, subd. (3), R. S. Utah 1933, providing that a person cannot be a witness who is:

"A party to any civil action, suit or proceeding, and any person directly interested in the event thereof, and any person from, through or under whom such party or interested person derives his interest or title or any part thereof, when the adverse party in such action, suit or proceeding claims or opposes, sues or defends, as guardian of an insane or incompetent person, or as the executor or administrator, heir, legatee or devisee of any deceased person, or as guardian, assignee or grantee, directly or remotely, of such heir, legatee or devisee, as to any statement by, or transaction with, such deceased, insane or incompetent person, or matter of fact whatever, which must have been equally within the knowledge of both the witness and such insane, incompetent or deceased person, unless such witness is called to testify thereto by such adverse party so claiming or opposing, suing or defending, in such action, suit or proceeding."

Respondents answer appellants' contention on two grounds: (1) That the testimony of Mrs. Brown was competent, and (2) that if it was not competent there is sufficient competent evidence without her testimony to sustain the findings and judgment of the court. We have carefully read the whole record including the transcript of the testimony contained in the bill of exceptions. Appellants' position on the question of the admissibility of the evidence drawn in question by the assignments argued cannot be sustained. The rulings of the trial court in applying the statute were carefully considered and provisions of the statute adhered to. The court when in doubt excluded the evidence or admitted it subject to exclusion upon further consideration. One instance is sufficiently illustrative: Lyman Skeen and Annie Skeen had executed a note and a mortgage, first to a bank and after a time, and during the existence of the declaration of trust, executed another to the Utah State Land Board, the funds from the latter mortgage to be used to pay the former. The question of the payment of interest

became one of the items in the accounting. Under the terms of the declaration of trust, the plaintiffs were authorized to pay, among other things, "interest."

To show the payment of interest on one or both of these obligations, Mrs. Brown offered in evidence checks drawn by her on her personal bank account, payable to the mortgagee, some of which were supported by receipts. Mrs. Brown was then asked the purpose for which the checks were drawn and delivered. The court refused to permit her to state the purpose of drawing and delivering the checks. The following is the record:

"Q. I show you Mrs. Brown a check bearing date of February 17, 1927, signed by Mary E. Rawson, is that your signature? A. Yes." (This was objected to under the statute.)

"The Court: Well, I think at this time, there is quite an important question whether the evidence should go in or not. I will take the noon recess at this time. * * * After recess.

"The Court: I will overrule the objection and you may have an exception. * * *

"Q. Is all of the writing on that check in your hand writing? A. It is.

"Q. Did you go to the National Bank of Commerce on or about the date in question, February 17? A. Yes sir. * * *

"Q. Was Lyman or Annie Skeen present at the time and place in question?" (Objection was made and sustained.)

"The Court: So far as the Court is concerned you may have that understanding that the testimony as to their presence and absence, the objection to it may be sustained.

"Q. And for what purpose did you deliver this check to Mr. Barton [at the bank]? (This was objected to and the objection overruled.) A. It was to cover three months' interest on a note of eight thousand dollars signed by Lyman Skeen and his wife."

This was as far as plaintiffs were permitted to go. Appellants seem to contend that the payment of interest, whether or not the one so paying was authorized so to do, constitutes a transaction equally within the knowledge of the party paying and the deceased. Mrs. Brown may pay

money to the bank for the use and benefit of the deceased, or make a contract for the benefit of the deceased, wholly without the knowledge of the deceased. Whether deceased was aware of the payment or contract or not he could not deny the making of the payment or the making of the contract. The statute has been construed by this court, with the exceptions therein mentioned, to the effect

"that a party in a civil action, where the adverse party sues or defends as administrator of a deceased person, is incompetent to testify as a witness as to any statement by, or transaction with, such deceased person where the statement or transaction must have been equally within the knowledge of the witness and such deceased person." *Robison* v. *Gull*, 52 Utah 323, 173 P. 905, 907, and cases there cited.

In the case of *Mower* v. *Mower*, 64 Utah 260, 228 P. 911, the question arose as to whether or not certain of the children of a deceased who were heirs were disqualified under the statute from testifying to having seen a deed in possession of their mother, grantee of their father. In that case the court held that even though it were assumed that the children had an interest in the event of the suit by reason of the fact that they were heirs of the deceased, that interest was with the plaintiff and not with the defendant, so that the adverse party, their mother, was not defending as administrator, heir, or legatee or devisee of the deceased, but was defending in her own right as grantee under the deed, so that the express terms of the statute did not exclude these children from being witnesses as to the possession of the deed.

The disqualification of a witness, under circumstances making the statute applicable often presents difficulties in close cases. When testimony is admissible or when it is not often calls for careful discrimination and judgment by the trial court. In the instant case, the transactions with the bank and others referred to do not fall within the prohibition of the statute.

Appellants' assignments must fail upon the second ground urged by respondents, viz., that there was not sufficient

competent evidence to sustain the findings of the court. Competent evidence was furnished by disinterested witnesses, by Mr. Riley of the bank as to the identification and application of the checks (Exhibit B) to the Lyman Skeen note, and Mr. Marsden as to the examination and approval of the account (Exhibit D). The findings and decree of the trial court upon those matters find support without the testimony of Mrs. Brown, whose testimony was limited to identification matters not within the knowledge of deceased. The examination of the account by deceased in detail and without objection thereto was testified to by Mr. Marsden.

What has been said sufficiently disposes of the issues argued under the assignments relating to issue No. 5, supra, error in denying the motion for a judgment of nonsuit, and issue No. 6, supra, error in making certain findings of fact, conclusions of law, and the decree.

Appellants contend that:

"The bill of particulars contains no reference to the personal account described in the findings, the personal account is not alleged in the pleadings and is clearly not within the issues of this case. If the trial court had no jurisdiction to determine the amount of the personal account as is asserted in the findings themselves, it had no jurisdiction to determine that the personal account was in excess of the rents, issues and profits of the property. Furthermore no accounting was made by Mrs. Brown. Her own stipulations as to the amount received on beets alone is that she received $2,353.23 and this amount is more than the total credits on the personal account. Thus if we disregard the fact that the ledger entries, Exhibit 'D,' and Exhibit 'F' are incompetent under the statute and if we consider the other evidence in the light most favorable to respondents, still, there should be a credit upon the trust account."

It is true the bill of particulars contains no reference to the personal account described in the findings, but the personal account is rather definitely set out in defendants' answer. We have set out plaintiffs' position rather fully because the matter at which it is aimed is contended to be reversible error and because it will aid in comparing the finding of the court attacked in that particular part of the

argument with the issues in the cause. The finding referred to is No. 8 and is as follows:

"8. The court further finds that the plaintiffs, Mary E. Rawson Brown, has since the 16th day of February, 1927, received various sums of money as rents, issues and profits from the real estate described in said amended complaint and in these findings, and the court further finds that during all of said time the said plaintiff, Mary E. Rawson Brown, advanced the said Lyman Skeen, various sums of money in addition to the moneys advanced by her for the preservation of said trust property, and for premiums, insurance, interest, taxes, assessments, etc., as specifically set forth in paragraphs 3 and 4 of these findings, which said moneys, so advanced, did not come under the terms of said declaration of trust and said properties therein described did not constitute a lien as security for the repayment of said moneys. That during said time since the 16th day of February, 1927, the plaintiff, Mary E. Rawson Brown, has carried such account as an open, running and continuous personal account separate and apart from the moneys so advanced and paid out by plaintiff under the terms of said declaration of trust; that at the times plaintiff received said moneys as rental from said property, the said Lyman Skeen made no request and gave no direction as to how or as to which account said moneys should be credited, and that plaintiff credited said moneys to the so-called personal account rather than to the trust account. That after the death of the said Lyman Skeen and the appointment of the defendant Henry T. Maw as administrator, the said plaintiff, Mary E. Rawson Brown, filed a claim with said administrator wherein she set forth the amount of moneys alleged to be due her after crediting all moneys received by her from said rentals arising out of said personal account; and in this connection the court finds that the estate of Lyman Skeen is indebted to the plaintiff, Mary E. Rawson Brown on said personal account in a sum in excess of the amount received by her as rentals as aforesaid, but the court makes no finding in this proceeding as to the amount of said account for the reason that said matter is vested in the jurisdiction of the probate proceedings in the matter of said estate and said claim should be litigated and fully determined in that proceeding."

The court probably had good reasons for inserting the above into the findings made. Counsel contends it is not properly an issue; yet it was pleaded affirmatively in defendants' answer. The matter of accounting was brought into the case, in so far as it was brought in, by defendants

themselves. The accounting called for and the evidence produced thereon by the defendants are collateral to the foreclosure suit and presented a situation difficult to handle by the trial court as a matter of admissibility of evidence. Defendants opened the question and presented the question sufficiently to make Mrs. Brown's testimony competent by demanding an accounting, questioning her thereon, and presenting evidence themselves. The defendants, having opened the matter and presented the issue, are not now in a position to complain in so far as finding No. 8 is concerned. No judgment is based upon the finding and it might be regarded as surplusage. It does not purport to be a definite finding upon which to base a judgment. It is directed to a matter to be subsequently determined. Had the court not said something about the accounting demanded by defendants' answer and the evidence presented thereon, counsel might have contended the court did not find upon all the issues. Defendants' answer contains the following allegation:

"That the plaintiffs long prior to the 16th day of February, 1927, and since said date, received large sums of money from the said Lyman Skeen and Annie Skeen, including the rents, issues and profits from the real estate described in the Amended complaint and since the death of the said Lyman Skeen, they have received large sums of money paid as insurance upon the life of the said Lyman Skeen, and during all of said time there were open running and continuous accounts between the said Lyman Skeen and Annie Skeen, and the said plaintiffs, and this defendant is not informed as to whether the money received by the said plaintiffs exceeded the money, if any, advanced by them to the said Lyman Skeen and Annie Skeen, or in the payment of taxes or other charges upon or against said property. That the balance of said account can be determined only by a strict accounting on the part of said plaintiffs."

This alleged necessity for an accounting and the statement made in finding No. 8 may, when the parties get into the probate court to try out and determine the issue involved in that accounting, result differently than suggested by the trial court. The court said in that finding:

"And in this connection the court finds that the estate of Lyman Skeen is indebted to the plaintiff, Mary E. Rawson Brown on said personal account in a sum in excess of the amount received by her as rentals as aforesaid, *but the court makes no finding in this proceeding as to the amount of said account for the reason that said matter is vested in the jurisdiction of the probate proceedings in the matter of said estate and said claim should be litigated and fully determined in that proceeding.*". (Italics added.)

In view of their allegations, the finding of the court and the evidence submitted, the defendants are not in a position to complain. Nor are they prejudiced by the finding. In so far as the personal accounting being an issue in this proceeding is concerned, much may be said to the effect that it is not an issue. The real issue presented by plaintiffs' complaint is a foreclosure proceeding, but defendants having alleged in their answer that both before and after the execution of the trust agreement, bearing date of February 16, 1927, and since the death of Lyman Skeen, "there were open, running and continuous accounts between the said Lyman Skeen and Annie Skeen, * * * " and "that the balance of said account can be determined only by a strict accounting on the part of said plaintiffs," brought the matter so before the court that it seemed proper for the court to say something in the findings in relation thereto. The net result of the finding, however, is to suggest that the matter should be determined in the probate court where the estate proceeding is pending. Whether it was or was not the duty of Mrs. Brown to apply certain moneys received by her on the trust account, or whether she had the option to apply it on the trust account or on the personal account, may under certain circumstances affect creditors of the estate, if there are any. Creditors are not complaining in this action. We cannot see, however, that it can affect defendants. If the mortgage indebtedness is reduced and the unsecured personal account against the estate is increased by an equal amount, the net amount of the estate remains the same if the estate is solvent, and, if it is insolvent, is any one affected?

In addition to the matters thus presented and disposed of, appellants' reply brief raises another issue not presented or argued or found in the original briefs of either party. Appellants maintain in their reply brief that ▪ the deeds and declaration of trust constituted an absolute and indefeasible trust and not a mortgage. The trial court as a part of conclusion No. 4 said:

"That the deeds executed by the said trustors, Lyman Skeen and Annie Skeen, his wife, and the declaration of trust executed by the plaintiffs, when construed together, constitute in effect a mortgage given as security for the moneys so advanced by plaintiffs in the sums and amounts set out in conclusion of law number one."

The conclusion is supported by the findings and the findings by the evidence. Respondents say there is no assignment of error nor suggestion about this matter until the filing of the reply brief. Appellants claim the error was assigned when they assigned error in the making and entering of the decree as made and entered. The assignment, in so far as it relates to the construction given the documents by the court, reads:

"The Court erred in making a decree in favor of the plaintiffs against the defendants for the following reasons: * * * (d) That the said declaration of trust and the conveyances of the real estate referred to therein were void as to creditors in that the grantors reserved benefits therein for themselves."

Appellants then say:

"It will be noticed that there is no provision for reconveyance to the trustors under any condition."

and,

"It is the law in this state and elsewhere, that no action can be brought to foreclose as a mortgage a declaration of trust which is an indefeasible conveyance and the terms of the trust cannot be disregarded."

The Utah cases of *Hamilton* v. *Dooly*, 15 Utah 280, 49 P. 769, and *Dupee* v. *Rose*, 10 Utah 305, 37 P. 567, 568, are cited

and relied upon. In the latter case it is stated that the only material question is whether the plaintiff who had brought suit to foreclose had the right to resort to a court of equity to foreclose the trust deed. The case does not support appellants' contention. It is held that a deed of trust is in legal effect a mortgage. The court said:

"A power to sell contained in a trust deed, given as security for a debt, does not divest a court of chancery of jurisdiction to enforce the rights of the parties thereto; nor does it abridge the right of the party who receives such an instrument as security to resort to a court of chancery, instead of proceeding under the power. Such a power is merely cumulative, additional to that granted by law, and the person whose debt is secured may proceed under the power, or foreclose in the manner provided by law for the foreclosure of mortgages, in which latter case the grantor has the right to redeem same as under a mortgage."

In that case the trust deed contained a power of sale. In this case the declaration of trust contained a power of sale. The court quotes the following from Story, Eq. Jur., § 1018:

" 'The particular form or words of the conveyance are unimportant; and it may be laid down as a general rule, subject to few exceptions, that whereever a conveyance, assignment, or other instrument transferring an estate is originally intended between the parties as a security for money or for any other incumbrance, whether this intention appear from the same instrument or from any other, it is always considered in equity as a mortgage, and consequently redeemable upon the performance of the conditions or stipulations thereof.' "

104-57-7, R. S. Utah 1933, has for a long time been part of the statute law of Utah. It provides:

"A mortgage of real property shall not be deemed a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale."

The section has been many times referred to in the cases and construed. A deed absolute in form may be shown to be a mortgage when it is shown to be an instrument of security rather than one of sale. *Duerden* v. *Solomon, 33*

Utah 468, 94 P. 978. Extrinsic evidence may be resorted to, not to vary the terms of a written instrument, but to show the object and purpose for which it was given. The court looks to the real character of the transaction, and when shown that the deed, though absolute in form, was given as security for the payment of a debt, it will be construed to be a mortgage and may be foreclosed as such. The same doctrine is approved in the case of *Thomas* v. *Ogden State Bank,* 80 Utah 138, 13 P. (2d) 636, although in that case the transaction was determined to be a conditional sale.

In the instant case the trustors were allowed under the terms of the declaration of trust to continue in possession of the property without rental or accounting. The following language is pertinent as to the object and purpose of the deeds and declaration of trust set out in the declaration of trust itself:

"That the amount of encumbrances, taxes, costs, interest, etc., against the property and owing by the trustors as hereinbefore set out at this time are large in comparison to the real value of said property, and the taxes, costs and interest which will accrue annually hereafter may materially add to the present amount."

Further advancements to the trustors by the trustees or other members of the trustors' family, it is provided shall constitute a lien. The declaration of trust provides:

"And the Trustors hereby acknowledge as paid for them the items and amounts hereinbefore listed and hereby agree that the persons hereinafter listed as paying the same shall have a lien on said trust estate through the trustees the same as herein provided for advancements hereafter to be made for trustors."

It is contended that the question of construing the documents to be a mortgage is not before the court because of failure to assign error. The matter is argued and we have considered the question as though it had been properly assigned. The documents themselves indicate the character and purpose of the deeds and declaration of trust. The record leaves no doubt about the situation. It was not error

for the trial court to construe the deeds and declaration of trust as a mortgage and order the same to be foreclosed as such. All parties to the proceeding were given the right to be purchasers or bidders at the sheriff's sale. It was not error to do so. Construing the transaction to be a mortgage carries with it the right of the mortgagees or trustees to be bidders at the sale, otherwise they in the absence of a substantial bid might be stripped of the property given as security and be the recipients of a fruitless victory. The proceedings indicate a degree of honor and fair dealing on the part of plaintiffs not subject to criticism.

But when the trial court found and properly decreed that the transaction was one of security and a mortgage, the question of an indefeasible trust is disposed of adversely to appellants' contention. When the matter becomes one of foreclosure and sale under a mortgage, the rules relating to indefeasible trusts do not apply.

Appellants claim the case of *Hamilton* v. *Dooly,* supra, to be an authority in the instant case. We think the Hamilton Case was correctly decided. It is clearly distinguishable on the facts from the case at bar. The court in that case found a naked trust. There was such a manipulation of property and proceedings had in that case as to amount to fraud to require the hand of equity to do just what was done.

We are of the opinion the judgment of the trial court should be affirmed. Such is the order. Respondents to recover costs.

ELIAS HANSEN, C. J., and FOLLAND and EPHRAIM HANSON, JJ., concur.

WOLFE, J., concurs in the results.