## JENSEN v. LOGAN CITY et al.

No. 5931.   Decided March 15, 1939.   (88 P. 2d 459.)

For former opinion, see 96 Utah 53, 83 P. 2d 311.

Second petition for rehearing filed April 11, 1939.

*Homer Holmgren,* of Salt Lake City, and *H. A. Sjostrom,* of Logan, for appellant.

*Leon Fonnesbeck* and *Young & Bullen,* all of Logan, and *Bowen & Quinney,* of Salt Lake City, for respondents.

PRATT, Justice.

Alfred Jensen tripped and fell over a net wire fence. He was injured. The fence was on a Logan City sidewalk in front of the Anderson Lumber Company property. It was owned by the company. Mr. Jensen sued the city and the company for damages. He pleads two grounds of negligence: A careless and negligent manner of fastening the fence after folding it back on itself to permit the removal of a tree on the fence line; and carelessly and negligently permitting the fence to extend out over the paved part of the sidewalk creating a hazard for pedestrians. Previous decisions of this case may be found in 89 Utah 347, 57 P. 2d 708, and 83 P. 2d 311. In these citations the facts and some of the testimony may be found more in detail than given here. This decision is upon rehearing granted of the later case of the two.

The fence was about four feet high and the fence line was three feet east of the paved part of the sidewalk. Among

the findings of fact of the lower court is No. 7 which reads as follows:

"That the loosened portion of said fence, folded back as hereinbefore found, was drawn back northerly along the stationary portion of said fence for the same distance from the pivot post upon which it was folded as the said loosened portion had extended southward from said pivot post while in its stationary condition, and the said folded portion of said fence along its whole extent stood approximately upright against the stationary portion thereof along which it was folded and at approximately the same height, the bottom thereof protruding not to exceed from six to ten inches out from the stationary portion of said fence, and was fastened to the said stationary fence by twisting, by means of pliers, the ends of the loosened wires of the first, third and fourth strands thereof around the corresponding wires of the stationary portion of said fence; that neither the defendant Logan City nor Anderson Lumber Company was guilty of any negligence in the manner in which said fence was folded back and fastened, but the same was folded back and fastened in a reasonably careful and prudent manner; that the bottom portion of said fence as it was so folded back and fastened did not extend out upon the said paved sidewalk or any part thereof and said fence did not constitute any hazard to pedestrians using said sidewalk; that it remained in substantially the same position and condition from the time it was originally so folded back and fastened till some time after 10 o'clock P.M. of the day upon which the accident here complained of occurred."

As part of finding of fact No. 9, the lower court included this:

"* * * but the court finds that neither the said defendant Anderson Lumber Company nor Logan City at any time had any knowledge or notice, either actual or constructive, that said fence had so become loosened or extended or that said fence or any part thereof was in such position or condition as to create or constitute a hazard or danger to anyone using the adjacent sidewalk."

Plaintiff attacks finding No. 7 on the ground that it ignores the uncontradicted testimony of his witnesses. May it be said that plaintiff's witnesses, or at least some of them, testified that at the times prior to the accident when they passed the lumber company property, the folded part of the fence extended out upon the paved part of the sidewalk. De-

fendants' witnesses on the other hand testified that when they passed the place the fence did not extend out over the paved part of the sidewalk, but extended out at its bottom only about six to ten inches from the fence line. It was possible for the testimony of each group to be true, as all witnesses did not pass at the same time. Had the lower court found that at times the fence was out over the paved part of the sidewalk and at other times it was not, it would have been consistent with the testimony. Was it unreasonable to find otherwise? Plaintiff answers this question in the affirmative on the theory that it was the duty of the lower court to reconcile the testimony of the witnesses.

We do not question but that the trier of the facts, be he judge or juror, should, where possible, reconcile the testimony. This rule, however, is not applicable to the exclusion of all others. After all it is for him to determine where the ultimate truth of the case lies. There are many factors governing that determination. The trier of the fact must not arbitrarily, capriciously, nor without adequate reason reject the testimony of a witness. On the other hand the testimony of a witness founded in ignorance, confusion, mistake, bias or prejudice, or falsehood is not acceptable simply because no other witness has testified conversely.

Let us keep in mind: The lower court found that the fence extended six to ten inches out from the fence line, whereas the plaintiff wanted him to find that it extended out over the paved part of the sidewalk—a distance of three feet or more from the fence line. The position of the fence prior to the accident became material upon the question of whether or not the defendants had knowledge or notice of an alleged hazardous condition caused by the fence on the sidewalk; and whether or not there was a hazardous condition.

It has been suggested that a fence six to ten inches out, or three feet out—either—would be sufficient to give notice of the alleged hazardous condition. But we have no such

issue to decide. The case was not tried upon the theory that any protrusion of the fence constituted a hazard of which defendants had, or should have had, knowledge or notice. No testimony was introduced on that theory nor is the point raised by brief. Having found that the fence did not reach to the paved part of the sidewalk, the court found (concluded) that it was not a hazard. This was the theory of the trial of the case.

The accident happened the night of March 18, 1933, sometime after 10 o'clock. Keeping in mind that defendants' witnesses testified that the fence was folded back upon itself for the entire length of the fold; was fastened to the stationary fence; and did not extend out upon the paved part of the sidewalk; let us see at what periods of time defendants' witnesses passed the place. Mr. Schow: Every day, including the 18th, during the lunch hour; Mr. Hailstone: 18th of March about 3 or 4 P. M.; Mr. Bench: Every day, five times a day, for the Wednesday, Thursday, Friday, preceding the 18th and Saturday the 18th; Mrs. Bench: Saturday the 18th at 3 P. M.; Mr. Fister: Every day, four times a day, morning, noon, and night, (6 to 7 P. M. at night) ; Mr. Lundahl Jr.: Two or three times a day—on the 18th twice—12 M. to 1 P. M.; Mr. Gibbons: Daily between 12 and 1 P. M., and between 5:30 and 6 P.M.; Mr. Wilson: Four times daily, morning, noon, and night, and on the 18th at 10 P. M.; Mr. Petersen: Four times daily and about 9:30 or 10 P. M. of the 18th; Mr. O. O. Jacobsen: A lot of time visiting the workers there, and at 9:45 P. M. the 18th; and Mr. Fred Jacobsen: Three times altogether, one of them being the afternoon of the 18th.

This testimony alone certainly is rather convincing of a continuous condition as to the fence—a condition as testified to by these witnesses.

Now let us compare those periods of time with the time plaintiff's witnesses passed: Mr. Sjostrom: The night of the 16th about 10 or 11 P. M. (not in conflict with defendants' witnesses as to date and time of day) ; Mr. Jeppson:

Possibly March 7th about 3:30 P. M. (similarly free of conflict as to day and time); Lora Cazier: Possibly the 17th late in the afternoon, (this may conflict with Mr. Gibbons for the defense); Mr. Burnham: The 17th or 18th of March about 1 or 2 P. M. (this may conflict with Schow, Hailstone, Bench, Fister, Lundahl Jr.,—in fact with most of defendants' witnesses, or it may not); Clyde Jacobsen: Twice a day for three or four days prior to the accident, (may conflict with many of defendants' witnesses, and may not); Mr. Drinkwater: Not sure as to it being before or after the 18th, but about 9 or 10 P. M. (rather uncertain as to conflict here); Mr. Weston: Once or twice a week (conflict uncertain); and plaintiff Alfred Jensen: Two weeks prior to the accident in the afternoon toward evening, and also between 3 and 5 P. M. on the 18th.

Thus it may be seen that a conflict in time as between witnesses may depend greatly upon how the trier of the fact views the rather indefinite periods fixed by the witnesses. But let us consider more of the testimony. Plaintiff admits that he didn't see the wire out on the paved part of the sidewalk the afternoon of the 18th. He was there however for some time and had every reason to notice it, if it interfered with the use of the walk. Clyde Jacobsen for the plaintiff, refused to say that the wire fence was out on the paved part of the sidewalk. He said it was in a snow path made by the plow where it left the pavement. Mr. Drinkwater was not certain that he was on the pavement when he struck his foot. Snow covered the pavement at the time.

Viewing this testimony of these witnesses we are impressed with the fact that it would be reasonable for the trier of the facts to feel that plaintiff's witnesses themselves were not any too certain of where the wire fence was even though, had we been the trier of the facts, we might have found otherwise. Add to this Mr. Jeppson's confusion as to the distance between fence line and the paved part of the sidewalk, and the uncertainness of Lora Cazier's testimony, and one may readily see that the lower court's

interpretation of the testimony was within the bounds of reason.

Keep in mind that the trier of the fact is not bound to believe everything a witness has said. He may believe many witnesses as against one, or one as against many. The ultimate truth of the case is his goal and be his road smooth or rocky, if he has taken a reasonable route to get there, we should uphold him.

We believe the other assignments of error have been fully covered by the previous decision of this case. For that reason we do not refer to them again.

The lower court's finding of lack of negligence and carelessness upon the part of the defendants was clearly a legal conclusion; but it is a superfluous part of finding No. 7 in view of the other facts found. The finding of no notice of a hazardous condition of the fence was also superfluous in view of the fact that the lower court found that the fence did not constitute a hazard.

We are of the opinion that the judgment of the lower court should be affirmed; and it is so ordered.

Costs to respondent.

WOLFE and McDONOUGH, JJ., concur.

MOFFAT, C. J., and LARSON, J., dissent for the reasons stated in the former opinion filed October 19, 1938.