# BYBEE et al. v. STUART.

No. 6981.  Decided January 29, 1948.  (189 P. 2d 118.)

464

See 41 C. J., Mortgages, sec. 81. Deed absolute on its face, with contemporaneous agreement or option for repurchase by grantor, as a mortgage vel non, see note, 79 A. L. R. 937. See, also, 36 Am. Jur. 750.

*David J. Wilson,* of Ogden, for defendant and appellant.

*Thatcher & Young,* of Ogden, for plaintiffs and respondents.

*Thatcher & Young,* of Ogden, for interpleaded plaintiffs, cross-defendants and respondents.

WOLFE, Justice.

Appeal by the defendant from a judgment and decree of the second district court, ordering defendant to execute a conveyance of certain lands to plaintiffs and quieting plaintiffs' title thereto.

The facts out of which this case arises are these:

In 1936 the wife of cross-defendant Oni Douglas Stuart died, and defendant (Claude Stuart) took Oni's son, David, to live with him and his family. Oni and Claude were brothers. It is fairly inferable from the record that defendant took the boy, David, as an acknowledged family obligation, and without expectation of recompense. There was no contract between the brothers that defendant should receive any pay or other consideration for performance of this duty. Oni, at all times, paid for his son's clothing, schooling, and other expenses. The boy, David, assisted with the household chores around defendant's place, and apparently was treated very much the same as defendant's own sons.

The trial court found the facts substantially as follows:

On May 11, 1942, and for a long time prior thereto, Oni Stuart owned a tract of land in Weber County. The land was heavily mortgaged, and the mortgages were then in the process of foreclosure. Oni was in straitened financial circumstances and was about to lose his land. Oni being unable to get credit from outside sources, his brother, the defendant, agreed to advance the money necessary to pay off the mortgages in order that he would not lose his land. As security for the money advanced, Oni executed to defendant a warranty deed, absolute in form, to his land.

Contemporaneous with the deed, and as part of the same transaction, the parties also had drawn the following agreement:

"Statement

"This Memorandum of Agreement witnesseth:

"That Oni Douglas Stuart has this day conveyed by warranty deed to the undersigned, Claude E. Stuart, the following described real property * * * [description omitted].

"The conveyance of said property was made to enable the undersigned, Claude E. Stuart, to obtain a loan on said premises for eleven hundred ($1100.00) Dollars, to be used in paying an existing mortgage against said property, together with delinquent taxes and certain expenses incurred in connection with adjusting foreclosure proceedings instituted against said property amounting to the sum of approximately eleven hundred ($1100.00) Dollars.

"It is understood and agreed on the part of the said Claude E. Stuart that he will reconvey said premises to Oni Douglas Stuart upon the repayment to him of the amount of mortgage which he has executed against said premises, together with all interest and other expenses, including taxes, that said Claude E. Stuart may have incurred or may incur in paying off the mortgage executed against said premises, and any other expenses connected with the same, said payment to be made within................years from this date.

"*It is further agreed on the part of the said Claude E. Stuart that should Oni Douglas Stuart desire to sell this property, that he, the said Claude E. Stuart, will convey to such purchaser the title to said property upon the payment to him of the amount hereinbefore provided.*

"This agreement or understanding is to be binding upon the heirs, successors, and assigns of the parties hereto.

"This, the 11th day of May, A. D., 1942.

"(Signed)    Claude E. Stuart"

(Italics added)

During June, 1942, Oni Stuart was ill in the hospital. When he was well enough to leave the hospital, he went to defendant's home to stay during his convalescence. Defendant testified that about a week after Oni left the hospital, the two brothers had a conversation as follows:

"A. We were sitting in the living room and Oni turned to me and he said: 'You have been mightly nice to me. Have me come and live here. I want to stay here until I get over my illness I got.' I said: 'That is perfectly alright.' He said: 'You have been good to me and

good to the boy, and have given the boy a good home. We will just let the title stay in your name, and leave the title just as it is, and you can have the use of the land, and the title will be yours, and the land is yours. We will let the title stay just as it is at the present time.'

"Q. Was anything said about the care of the boy? A. Yes.

"Q. What? A. He said: 'If you continue to take care of the boy and give him a good home until he gets of age, why, you have the land.'

"Q. Alright, what did you say? A. I told him: I said, 'That is perfectly alright with me. When the time came when the boy was of age, if he wants the land then I will give him title to the land in reimbursement of what I got in the land myself, without interest.'

"Q. Was anything further said by your brother Oni? A. Oni said: 'That is alright. We will let the matter stand as it is.' "

Defendant's wife, who was present at the time the conversation was supposed to have taken place, was called to corroborate defendant's testimony but was unable to do so. Oni categorically denied that any such conversation ever took place.

On July 13, 1942, about two weeks after the purported conversation above quoted, Oni listed the land for sale with cross-defendant Cook, a real estate broker. In September, 1944, plaintiffs contracted to purchase the land from Oni, and he executed a deed to them in October, 1944.

When defendant learned of the deal between plaintiffs and Oni, he called upon Cook, and claimed to be owner of the premises.

Plaintiffs commenced this action against defendant to compel him to execute and deliver to them a conveyance to the premises, upon receiving the amount expended by defendant in preserving the property. Defendant answered, and by way of counterclaim against plaintiffs and cross-claim against Cook and Oni Stuart who were interpleaded as "cross-defendants," asserted title in himself and prayed that title be quieted in him.

The trial court concluded from the facts as outlined above that plaintiffs were the owners of the premises and entitled to immediate possession of the premises, and rendered judgment accordingly. From that judgment defendant prosecutes this appeal.

Defendant has assigned numerous errors, all of which go the correctness of the court's construction of the original transaction between Oni and defendant, and the effect, if any, upon this transaction, of the subsequent oral conversation between the two brothers. This being an equity case, we may review the facts as well as the law.

The first question presented for our determination is as to the nature of the original transaction between the brothers Stuart. Although it is not clear in the briefs, it appears to be defendant's contention that the original transaction was an absolute conveyance of the land in question to defendant. This position is without support in fact or law. It is true, of course, that a warranty deed, absolute in form, is presumed to convey a fee simple title, or at least whatever title the grantor has. But where, as here, there is a written agreement between the parties, contemporaneous with the deed, which shows the deed to have been given for security purposes, the court will look to the real transaction, and treat it as a mortgage. *Brown* v. *Skeen*, 89 Utah 568, 58 P. 2d 24. The fact that by the terms of the contract, Oni Stuart had the right to sell the land to a third person, clearly indicates the intention of the parties that title should not pass to the defendant.

Our statute (Sec. 78-1-13 U. C. A. 1943) furnishes a form for real estate mortgages. However, it is not necessary that an instrument follow the statutory form to be a mortgage. No particular form is necessary so long as the intention of the parties is shown. Nor is it necessary that the mortgage be contained in one writing—it may consist of a warranty deed and a separate contract in writing. *Brown* v. *Skeen*, supra. See also 1 Jones on Mortgages, 8th Edition, Chapter 2. And in equity a deed absolute upon its face may be shown by parol evidence to have been given for security purposes only, and when such a showing has been made, equity will give effect to the intention of the parties. Such security transactions, lacking the requisites of a formal mortgage, are termed

equitable mortgages. 1 Jones on Mortgages, Chapter 5; *Wasatch Min. Co.* v. *Jennings,* 5 Utah 243, 251, 15 P. 65; *Duerden* v. *Solomon,* 33 Utah 468, 94 P. 978; *Hess* v. *Anger,* 53 Utah 186, 177 P. 232. See also 3 Jones, Commentaries on Evidence, 2d Edition, page 2793, Section 1531.

The deed and contract here show all the requisites of a formal mortgage—a conveyance of particular land as security for a debt with the necessary defeasance clause. This was not merely an equitable mortgage—a security transaction resting partially in parol and cognizable only in equity. The two instruments, taken together, constitute a formal mortgage, cognizable in a court of law. Defendant did not acquire the title to the lands under the warranty deed. He was merely a mortgagee.

This brings us to the second question:

As we have heretofore noted, defendant testified to a conversation between himself and his brother Oni, by which it is claimed Oni orally surrendered to defendant any interest he had in the property. The court found that such a conversation did take place, and his finding is cross-assigned as error by the appellees. However, the court found that this purported surrender was ineffectual under the Statute of Frauds—Secs. 33-5-1 and 33-5-3, U. C. A. 1943. Defendant contends that Oni Stuart's oral surrender of his interest in the premises was valid.

We deem it unnecessary to pass upon appellees' cross-assignment of error, since we are of the opinion that even if such conversation took place as was testified to by defendant, it was within the Statute of Frauds and therefore unenforceable.

There are two rather well defined views of mortgages in the United States. In the so-called "title-theory" or "common law" states, it is held that a mortgage deed conveys to the mortgagee the legal title, subject to the mortgagor's equity of redemption. In the "equitable" or "lien-theory" states, it is held that the legal title

remains in the mortgagor subject to a lien in favor of the mortgagee. 1 Jones on Mortgages, Sections 12, 15-16, 18 and 67.

Utah, along with most of the other western states, has long been recognized as a "lien theory" state. 1 Jones on Mortgages Sections 60, 67, 68. This court has repeatedly said that a mortgage in this state does not vest title in the mortgagee, but merely creates a lien in his favor. *Thompson* v. *Cheesman*, 15 Utah 43, 48 P. 477; *Donaldson* v. *Grant*, 15 Utah 231, 49 P. 779; *Azzalia* v. *St. Claire*, 23 Utah 401, 64 P. 1106; *Carlquist* v. *Coltharp*, 67 Utah 514, 248 P. 481, 47 A. L. R. 765; *In re Reynolds' Estate*, 90 Utah 415, 62 P. 2d 270. These cases are based largely on a statutory provision which appears in our 1943 Code at Sec. 104-57-7 and is as follows:

"A mortgage of real property shall not be deemed a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale."

We note here a seeming contradiction in our statutes. Sec. 78-1-13, U. C. A. 1943, after setting forth the Statutory form for a mortgage of land, provides ■ as follows:

"Such mortgage when executed as required by law *shall have the effect of a conveyance* of the land therein described, together with all the rights, privileges and appurtenances thereunto belonging, to the mortgagee, his heirs, assigns and legal representatives, *as security for the payment of the indebtedness* thereon set forth, with covenants from the mortgagor of general warranty of title, and that all taxes and assessments levied and assessed upon the land described, during the continuance of the mortgage, will be paid previous to the day appointed for the sale of such lands for taxes; and may be foreclosed as provided by law upon any default being made in any of the conditions thereof as to payment of either principal, interest, taxes or assessments." (Italics supplied.)

At first blush this section would appear to be in direct conflict with Sec. 104-57-7. Apparently one section provides that a mortgage "shall not be deemed a conveyance,

whatever its terms," while the other provides that a mortgage in the statutory form "shall have the effect of a conveyance of the land." However, Sec. 78-1-13, when construed in the light of Sec. 78-1-1, is not necessarily inconsistent with Sec. 104-57-7. Sec. 78-1-1 is as follows:

"The term 'conveyance' as used in this title shall be construed to embrace every instrument in writing by which any real estate, or interest in real estate, is created, aliened, *mortgaged, encumbered* or assigned, except wills, and leases for a term not exceeding one year." (Italics supplied.)

At common law the term "conveyance" meant a transfer of title or of an estate in land, or the instrument by which such transfer was accomplished. By the terms of Sec. 78-1-1, the definition is broadened to include not only the transfers of estates or interests in land, but also mortgages, incumbrances, etc. As used in Sec. 78-1-13, the term "conveyance" covers transactions not involving a transfer of title or of an estate in land, but merely an effective mortgage or incumbrance of the land. However, as used in 104-57-7, "conveyance" is used in its common law sense—a transfer of title or an estate in the land.

We adhere to the now well established doctrine that the mortgagor retains title to the mortgaged lands, and all that is created in favor of the mortgagee is a lien —a right to resort to the land to satisfy the mortgage debt. *In re Reynolds' Estate,* 90 Utah 415, 62 P. 2d 270.

Oni Stuart therefore, as mortgagor, held the title to the premises in fee, subject to a mortgage lien in favor of defendant, and therefore he had such an estate or interest in the land as could be conveyed only by a written instrument under Sec. 33-5-1, U. C. A. 1943, which provides as follows:

"No estate or interest in real property, other than leases for a term not exceeding one year * * *, shall be created, granted, assigned, *surrendered* or declared otherwise than by act or operation of law, or by deed or conveyance in writing subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunder authorized by writing." (Italics supplied.)

See annotation commencing at page 777 of 65 A. L. R.

Prior to the trial of this case, $882 was paid into court for the benefit of defendant, as repayment of the sums advanced by him to preserve the property. This tender was refused. The court found that the total money advanced by defendant was $875.20 for water stock assessments, general taxes, mortgage payments, etc., and ordered that $875.20 of the money paid into court be paid to defendant, and the balance remitted to Oni Stuart. There was no error in this.

The judgment of the trial court is affirmed. Respondents to have their costs.

McDONOUGH, C. J., and PRATT, WADE, and LATIMER, JJ., concur.