Clyde A. JACOBSON and Regina J. Jacobson, Plaintiffs and Appellants,

v.

Clyde E. JACOBSON and Erma B. Jacobson, Defendants and Respondents.

No. 14507.

Supreme Court of Utah.

Nov. 19, 1976.

W. Jerry Ungricht, Stephen R. Randle of Ungricht & Randle, Salt Lake City, for appellant.

Gary D. Stott, of Stott, Young & Wilson, Provo, for respondent.

CROCKETT, Justice.

Plaintiffs Clyde A. and Regina J. Jacobson brought this action to quiet title to twelve acres of farm property located in Utah County, alleging that the deed to the property, which they executed to Clyde's parents, defendants Clyde E. and Erma B. Jacobson, did not convey title, but should be construed as an equitable mortgage. Upon a trial to the court, it rejected plaintiffs' contentions and found to the contrary: that the deed had vested title to the defendants. Plaintiffs appeal, arguing that the evidence compels findings in their favor.

The plaintiffs purchased the property on August 28, 1962, under a Uniform Real Estate Contract for $14,538.10. They paid $810 down and made monthly payments of $100 until early 1965 when their payments became delinquent. In May 1965, the seller initiated proceedings against them to forfeit the contract and repossess the property. Pursuant to appropriate proceedings in that action, the court entered an order that the buyers, Clyde A. and Regina could have until June 8, 1965, to pay the then remaining balance of $14,538 or suffer judgment of forfeiture.

In order to avoid the forfeiture, the son, Clyde A., went to his father, defendant Clyde E., who was able to raise the $4,538; and by the borrowing of $10,000 from a family friend, Earl Stubbs, the total of $14,538 was paid. In connection with this transaction, Clyde A. and Regina signed what is referred to as an "open warranty deed" with the names of the grantors and grantees left blank, which deed was delivered to Mr. Stubbs.

About a year after that, Clyde E. and Erma repaid Stubbs his $10,000 and took the deed. Thereafter, in 1966, their names were filled in as grantees and the deed was recorded. Since that time they have paid all the taxes on the property, have maintained the premises and harvested the crops and have sold a portion of the land to a third party. The plaintiffs have lived in a house on the premises intermittently at various times since 1966, but have not done so since 1973. They have not paid the taxes on the property, nor have they repaid to the defendants the $14,500 plus. It is also of some significance that there was no written notation or memorandum of any character supporting the plaintiffs' contentions, nor was there any evidence as to any time or terms of repayment of the substantial sum the defendants had paid.

Other facts worthy of note are: that plaintiff, the son Clyde A., filed bankruptcy in 1969; and in testimony given therein he stated under oath that his father, Clyde

E. Jacobson, owned the property. Further, in a divorce action brought by Regina in 1973, neither she nor her husband Clyde A. claimed any interest in the property.

Plaintiffs' argument is that the fact that when the deed was executed by them it was blank as to any grantee, coupled with their evidence that it was not intended as a conveyance, but as a security for the money the defendants advanced, should compel a finding that the deed was intended as a mortgage.

The correctness of their assertion that a court of equity will treat a deed as a mortgage if it is shown that it was so intended is to be conceded.[1] But certain basic rules which give support to the solidarity of deeds create obstacles to plaintiffs' contention. A primary one is that a deed regular in form is presumed to convey the entire fee simple title,[2] or at least whatever title the grantor has.[3] A secondary one is that in order to overcome that presumption, one who attacks a deed has the burden of proving otherwise by clear and convincing evidence.[4]

Even though it is true, as plaintiffs advocate: that the attempt to reform a deed is a proceeding in equity in which the court *may* review the facts,[5] it is nevertheless well established that because of the advantaged position of the trial court, we give considerable deference to his findings and judgment.[6] It is inherent in the nature and purpose of equity that it will grant relief only when fairness and good conscience so demand. Correlated to this is the precept that equity does not reward one who has engaged in fraud or deceit in the business under consideration, but reserves its rewards for those who are themselves acting in fairness and good conscience, or as is sometimes said, to those who have come into court with clean hands.[7]

The trial court could reasonably have viewed the plaintiffs' conduct as not conforming to the principles just stated in that, when it suited their purpose, they were asserting that the property had been conveyed to and belonged to the defendants; but when it was to their advantage to do so, they claimed it for themselves. Moreover, it should be had in mind that the trial court was not compelled to believe the testimony given in their self interest;[8] particularly so when it showed such duplicity.[9] Much less was he obliged to believe that it was so clear and convincing that it must overcome the effect of the deed.

Supplementing what has been said above, there is also to be considered the doctrine of laches. That is, that a court of equity is reluctant to reward a party who has been dilatory in seeking his remedy. As is sometimes said, equity aids

1. *Gibbons v. Gibbons*, 103 Utah 266, 135 P.2d 105 (1943); *Thornley Land & Livestock Co. v. Gailey*, 105 Utah 519, 143 P.2d 283 (1943).

2. See Sec. 57-1-3, U.C.A.1953.

3. *Bybee v. Stuart*, 112 Utah 462, 189 P.2d 118 (1948); *Brown v. Skeen*, 89 Utah 568, 58 P.2d 24.

4. *Jardine v. Archibald*, 3 Utah 2d 88, 279 P.2d 454.

5. Utah Const. Art. VIII, Sec. 9, providing for appeal says: " . . . in equity cases, the appeal *may* be on questions of both law and fact; . . . "; *cf. Crockett v. Nish*, 106 Utah 241, 147 P.2d 853.

6. *Barker v. Dunham*, 9 Utah 2d 244, 342 P. 2d 867; *Nokes v. Continental Mining and Milling Co.*, 6 Utah 2d 177, 308 P.2d 954 (1957).

7. *Park v. Jameson*, 12 Utah 2d 141, 364 P. 2d 1; 27 Am.Jur.2d, Equity Sec. 136.

8. *Jensen v. Logan City*, 96 Utah 522, 88 P. 2d 459; *Page v. Fed. Security Insurance Co.*, 8 Utah 2d 226, 332 P.2d 666.

9. *Rhine v. Terry*, 111 Colo. 506, 143 P.2d 684 (1943).

the vigilant.[10] The requirement that laches must involve a delay; and also that because of the delay there has resulted some disadvantage to the other party,[11] is met here. In addition to the delay of eight years in bringing this suit, circumstances have intervened so that the delay has indeed placed the defendants at a substantial disadvantage. The father, Clyde A. Jacobson, originally a defendant herein, has now passed away, so his testimony as to his version of the transaction is no longer available. It is also shown that the property has greatly increased in value; and that a portion of it has been conveyed to a third party.

On the basis of what has been said herein, we see no justification for disturbing the findings and decision of the trial court.

Affirmed. Costs to defendants (respondents).

HENRIOD, C. J., and ELLETT, MAUGHAN and WILKINS, JJ., concur.

10. 30 C.J.S. Equity § 100; *Arnold v. Melani*, 75 Wash.2d 143, 449 P.2d 800 (1968).

11. *Papanikolas Bros. v. Sugarhouse Shopping Center*, 535 P.2d 1256 (Utah 1975).