GENERAL GLASS CORPORATION, a Colorado corporation, Plaintiff and Respondent,

v.

MAST CONSTRUCTION COMPANY, a Utah corporation; Ron Mast, as assignee of the rights of Intermountain Glass and Paint Company, a Utah corporation; United Pacific Reliance Insurance Company, a Washington corporation; and Oakhills Condominium Limited Partnership, a Utah limited partnership, Defendants and Appellants.

Ron MAST, as assignee of the rights of Intermountain Glass and Paint Company, a Utah corporation, Cross-claim Plaintiff and Appellant,

v.

MAST CONSTRUCTION COMPANY, a Utah corporation; United Pacific Reliance Insurance Company, a Washington corporation; and Oakhills Condominium Limited Partnership, a Utah limited partnership, Cross-claim Defendants and Appellant.

Ron MAST, as assignee of the rights of Intermountain Glass and Paint Company, a Utah corporation, Third-party Plaintiff and Appellant,

v.

STATE SAVINGS & LOAN ASSOCIATION; Utah State Tax Commission; Robert P. Hansen; Capitol Glass & Aluminum; Ron Mast, as assignee of the rights of Debenham Electrical Supply Co.; Electro Technical Corp.; Ron Mast, as assignee of the rights of Marathon Steel Company; Edwards & Daniels Associates, Inc.; John Brown & Associates; and John and Jane Does 1 thru 100, Third-party Defendants and Appellants.

Ron MAST, as assignee of the rights of Marathon Steel Company, an Arizona corporation, Plaintiff and Appellant,

v.

MAST CONSTRUCTION COMPANY, a Utah corporation; Oakhills Condominium Limited Partnership, a Utah limited partnership; and United Pacific Reliance Insurance Company, a Washington corporation, Defendants and Appellant.

MAST CONSTRUCTION COMPANY, a Utah corporation, Third-party Plaintiff and Appellant,

v.

PACIFIC WESTERN INDUSTRIES, INC., a Utah corporation; Oakhills Condominium Limited Partnership, a Utah limited partnership; and Edwards & Daniels Associates, Inc., Third-party Defendants.

AMERICAN SAVINGS & LOAN ASSOCIATION, a California corporation, formerly State Savings & Loan Association, Plaintiff and Respondent,

v.

OAKHILLS PARTNERSHIP, a Utah limited partnership; Pacific Western of Utah, Inc., a Utah corporation, formerly Pacific Western Industries, Inc., a Utah corporation; Charles W. Akerlow; Richard J. Anderson; State Tax Commission of Utah; Robert P. Hansen; Capitol Glass and Aluminum Corporation, a Utah corporation; Ron Mast, as assignee of the rights of Debenham Electric Supply Company, Inc., an Alaska corporation; Electro Technical Corp., a Utah corporation; Ron Mast, as assignee of the rights of Intermountain Glass & Paint Co., a Utah corporation; General Glass Corp., a Colorado corporation; Ron Mast, as assignee of the rights of Marathon Steel Co., an Arizona corporation; Edwards & Daniels Associates, Inc., a Utah corporation; Ogden's Carpet Outlet, a Utah corporation; Mast Construction Co., a Utah corporation; Mildred S. Freymuller; and John Does 1 thru 30, Defendants and Appellants.

Ron MAST, as assignee of the rights of Debenham Electric Supply Company, Plaintiff and Appellant,

v.

ELECTRO TECHNICAL CORPORATION; Mast Construction Company; the Oakhills Partnership; and United Pacific Insurance Company, Defendants and Appellants.

No. 860355–CA.

Court of Appeals of Utah.

Dec. 15, 1988.

Ronald C. Barker (argued), Salt Lake City, for Mast & Mast Const.

David W. Slaughter, Salt Lake City, for United Pacific Reliance Ins. Co.

Warren Patten, W. Cullen Battle (argued), Douglas B. Cannon, Salt Lake City, for American Sav. & Loan Ass'n.

Jeffery B. Brown, Salt Lake City, for Elect. Technical Corp. & Capitol Glass & Aluminum.

Paul R. Howell, Salt Lake City, for United Pacific Ins.

John C. Green, III, Salt Lake City, for Electro Technical.

Leland S. McCullough, Jr., Salt Lake City, for Mildred Freymuller.

James E. Boevers, Salt Lake City, for Western State Title.

David Black, R. Stephen Marshall, Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, for Edwards & Daniels.

## OPINION ON REHEARING

Before DAVIDSON, BENCH and JACKSON, JJ.

JACKSON, Judge:

These consolidated actions were brought to establish priority of the parties' interests in real property that was the site of the Oakhills Condominium project. Due to various assignments and substitutions, Ron Mast and Mast Construction Company (referred to collectively as "Mast") are the appellants and American Savings & Loan Association ("American") is the respondent. Mast appeals from the judgment below that American's deed of trust constitutes a valid lien against the Oakhills Condominiums property, with priority over Mast's mechanics' liens. We affirm.[1]

On March 28, 1983, Oakhills Partnership ("Oakhills") executed a promissory note to State Savings & Loan Association (the former name of respondent American) for $10,400,000, the sum loaned for construction of the Oakhills Condominium project, with interest payable monthly from April 1, 1983, and the principal due on May 1, 1985. On April 8, 1983, a document entitled "Multifamily Deed of Trust, Assignment of Rents and Security Agreement (Security for Construction Loan Agreement)" and dated March 28, 1983, was filed for recording in Salt Lake County. The document showed Oakhills, a Utah limited partnership, as "Trustor/Grantor" and "Borrower" and State Savings & Loan Association as "Beneficiary" and "Lender." The recitals state that Borrower, in consideration of the indebtedness recited and the trust created, grants, conveys and assigns to Trustee, in trust and with power of sale, the described Oakhills Condominium project property. The document recites that it is executed for the purposes of, among other things, repayment of the indebtedness evidenced by Borrower's note and performance of the covenants and agreements of Borrower contained in a Construction Loan Agreement, incorporated by reference. However, blanks in the deed of trust form for the trustee's name and for the date, amount, and due date of the note were not filled in; the space for the date of the Construction Loan Agreement was also left blank. The trust deed was executed by the Oakhills Partnership and signed by Charles Ackerlow and Richard Anderson on behalf of its general partner.

These competing actions were commenced after default on the note. On motions for summary judgment, the trial court ruled that the trust deed, as recorded on April 8, 1983, was operative as either a trust deed or mortgage, even though it contained the aforementioned blanks. The court reserved the following issues for trial: (1) whether the execution of the instrument was acknowledged before a notary public and, if not, what effect failure to acknowledge would have; (2) whether work commenced prior to April 8, 1983; and (3) whether the claimed activities of the subcontractor, Electro Technical Corporation, could constitute commencement of work under the mechanics' lien statute, Utah Code Ann. § 38-1-5 (1988).

At trial, Mast Construction Company, the general contractor, claimed work on the project began under the mechanics' lien statutes prior to April 8, 1983. Relying on the trial testimony of David Hammons, president of Electro Technical Corporation, that he placed certain electrical materials at the project site on April 6, 1983, appellants asserted their mechanics' liens should relate back to Hammons's date and take priority over American's deed of trust.

The trial court found: the trust deed was signed by duly authorized officers of the general partner in the presence of a notary public, who completed the certificate of acknowledgment but did not place the signatories under oath as stated in the certificate; and the notary public was personally acquainted with the signers and familiar with their respective authorizations from and business relationships with Oakhills and its general partner. In addition, the trial court specifically found no work com-

---

1. We previously issued an opinion in this case affirming the judgment of the trial court on a different basis. *General Glass Corp. v. Mast Constr. Co.,* 758 P.2d 438 (Utah Ct.App.1988). Mast's subsequent petition for rehearing was granted and the case was resubmitted for decision. The prior opinion was withdrawn by order of this court dated September 13, 1988. *General Glass Corp. v. Mast Constr. Co.,* 91 Utah Adv.Rep. 15 (Ct.App.1988).

menced and no materials were furnished at the Oakhills Condominiums site prior to April 8, 1983.

Based on these findings, the court concluded: (1) the trust deed acknowledgment was regular on its face and conformed to the statutory format; (2) the trust deed was entitled to be recorded and imparted constructive notice to all parties of American's lien; and (3) American's lien had priority over all other subsequent liens against the Oakhills Condominiums property.

On appeal, we must determine whether alleged defects and omissions in American's deed of trust, as recorded on April 8, 1983, were fatal to the creation of a lien or encumbrance on the property or to the recordability of the instrument. If not, we must then decide whether the court clearly erred in finding that, for purposes of applying Utah Code Ann. § 38-1-5 (1988), no materials were furnished and no work commenced on the project prior to recordation of American's deed of trust.

First, we examine the purpose and hybrid nature of a trust deed under Utah statutes. " 'Trust deed' means a deed executed in conformity with this act and conveying real property to a trustee in trust to secure the performance of an obligation of the grantor or other person named in the deed to a beneficiary." Utah Code Ann. § 57-1-19(3) (1986). Although a trust deed, like a mortgage, is given as security for the performance of some obligation, it is nevertheless a conveyance by which title to the trust property passes to the trustee. *See* Utah Code Ann. § 57-1-19(4) (1986) ("trustee" is person to whom title to real property is conveyed by trust deed); *see also* Utah Code Ann. § 57-1-28 (1986).

 As a general rule, an instrument purporting to be a deed and in which a blank has been left for the name of the grantee is no deed and is inoperative as a conveyance of legal title as long as the blank remains. *Burnham v. Eschler,* 116 Utah 61, 208 P.2d 96 (1949). Thus, the document recorded by American on April 8,

1983, is ineffective as a title-conveying instrument because it does not identify or name the trustee, who is the grantee under the deed.[2] We nonetheless agree with the trial court's alternative conclusion that the instrument recorded is operative as a mortgage despite this omission.

Unlike a trust deed, a mortgage in Utah is not a title-conveying instrument. The mortgagor retains legal title, and the mortgagee's interest is a lien on the property to secure payment of a debt. *State Bank of Lehi v. Woolsey,* 565 P.2d 413 (Utah 1977). *See* Utah Code Ann. § 78-40-8 (1987); *Bybee v. Stuart,* 112 Utah 462, 189 P.2d 118 (1948). In order to establish a valid mortgage (or trust deed), there must be in existence a legal debt or obligation with a specific amount owing, *Bangerter v. Poulton,* 663 P.2d 100 (Utah 1983), but there is nothing in our statutes which requires an instrument to specify the amount of indebtedness in order to be valid as a legal mortgage. Although Utah Code Ann. § 57-1-14 (1986) sets forth a land mortgage form that may be used which includes spaces for insertion of the amount and terms of the debt, no particular form is necessary as long as the writing shows the intention of the parties to create a valid legal mortgage. *See Bybee,* 189 P.2d at 122. The instrument need not show the amount of indebtedness as long as it sufficiently discloses the sources from which the specific amount may be ascertained. *Hampshire Nat'l Bank v. Calkins,* 3 Mass.App.Ct. 697, 339 N.E.2d 244 (1975); *Sease v. John Smith Grain Co.,* 17 Ohio App.3d 223, 479 N.E.2d 284, 290 (1984). *See Commercial Factors of Denver v. Clarke & Waggener,* 684 P.2d 261 (Colo.Ct. App.1984).

Here, the clear intention of the parties that American be given an interest in the described project property to secure repayment of its loan to Oakhills appears repeatedly on the face of the document. The parties are identified and repeatedly referred to as "borrower" and "lender." Notwithstanding the omission of the

---

**2.** In addition, Utah Code Ann. § 57-3-10(2) (1986) rendered the document unentitled to re- cording as a trust deed because it omits the name and address of the trustee/grantee.

amount and terms of the underlying note, the instrument recites numerous times that it is being executed precisely to secure repayment of Oakhills's indebtedness to American for a specific construction loan, evidenced by a promissory note. The instrument is thus a valid legal mortgage giving American a lien against the project property as security for repayment of the construction loan.

Mast next contends American's instrument was not entitled to be recorded under Utah Code Ann. § 57–3–1 (1986)[3] because "acknowledgment" of the instrument, required by Utah Code Ann. § 57–1–6 (1986),[4] necessitates a statement by the signers under oath. As an unrecordable instrument, Mast maintains, it could not impart the notice to third parties provided for in section 57–1–6 and Utah Code Ann. § 57–3–2 (1986)[5] even though it was, in fact, recorded. *See Norton v. Fuller,* 68 Utah 524, 251 P. 29 (1926) (actual recording of purported mortgage of no legal effect where acknowledgment of execution improperly taken by mortgagee as notary). Appellants' principal arguments are: (1) Ackerlow and Anderson did not sign the instrument in front of the notary public; and (2) the acknowledgment by the signers is defective because, as the trial court found, they were not placed under oath by the notary.

■ Mast overlooks the specific finding of the trial court that the instrument was signed in the notary's presence, choosing

instead to reargue the contradictory testimony on this point in the light most favorable to appellants' position. We must begin our analysis, however, with the trial court's findings, not with appellants' view of what facts should have been found. *Ashton v. Ashton,* 733 P.2d 147, 150 (Utah 1987). As we have said on numerous occasions, in order to challenge a finding of fact, it is an appellant's burden to marshall all the evidence that supports the court's finding and then demonstrate why, even viewing it in the light most favorable to the court below, it is insufficient to support the finding made. *E.g., Fitzgerald v. Critchfield,* 744 P.2d 301, 304 (Utah Ct.App.1987); *Harker v. Condominiums Forest Glen, Inc.,* 740 P.2d 1361, 1362 (Utah Ct.App. 1987) (following *Scharf v. BMG Corp.,* 700 P.2d 1068, 1070 (Utah 1985)). Only then can we consider whether those findings are "clearly erroneous" under Rule 52(a) of the Utah Rules of Civil Procedure. *Ashton,* 733 P.2d at 150. In light of Mast's failure to carry this burden on appeal, we will not disturb the trial court's finding. *See id.; Newmeyer v. Newmeyer,* 745 P.2d 1276, 1278 (Utah 1987).

Mast also claims the instrument was not properly acknowledged because the notary public did not require the signers "to take an oath, affirm or swear in connection with the signing" of it. Mast incorrectly cites *"R.S. McKnight v. State Land Board"* and asserts that case "sets forth the four re-

**3.** A certificate of the acknowledgment of any conveyance, or of the proof of the execution thereof as provided in this title, signed and certified by the officer taking the same as provided in this title, shall entitle such conveyance, with the certificate or certificates aforesaid, to be recorded in the office of the recorder of the county in which the real estate is situated.

Utah Code Ann. § 57–3–1 (1986). The term "conveyance" as used in Title 57 embraced "every instrument in writing by which any real estate, or interest in real estate, is created, aliened, mortgaged, encumbered or assigned, except wills, and leases for a term not exceeding one year." Utah Code Ann. § 57–1–1 (1986).

**4.** Every conveyance of real estate, and every instrument of writing setting forth an agreement to convey any real estate or whereby any real estate may be affected, to operate as

notice to third persons shall be proved or acknowledged and certified in the manner prescribed by this title and recorded in the office of the recorder of the county in which such real estate is situated....

Utah Code Ann. § 57–1–6 (1986) (repealed by Utah Laws 1988, ch. 155, § 24; now see Utah Code Ann. § 57–3–2 (1988)).

**5.** (1) Every conveyance, or instrument in writing affecting real estate, executed, acknowledged, or proved, and certified, in the manner prescribed by this title ... shall, from the time of filing the same with the recorder for record, impart notice to all persons of their content. Subsequent purchasers, mortgagees, and lien holders are deemed to purchase and take with notice.

Utah Code Ann. § 57–3–2(1) (1986) (1985 amendments were stylistic only).

quirements need [sic] for a valid *notarization:* (1) *an oath* or solemn declaration; (2) a manifestation of an intent to be bound by a statement *or act, but something more than just signing the document;* (3) the signature; and (4) an acknowledgment by an authorized person that the oath was taken." (Emphasis added.) Mast then argues that the acknowledgment on American's instrument is invalid because requirements (1) and (2) were not satisfied. Mast has, however, grossly mischaracterized the facts and holding in *McKnight* in order to make it appear controlling in this case.

*McKnight* involved the filing of applications for oil and gas leases under statutes that required applicants to be citizens or corporations of the United States and stated lease applications must be accompanied by a "statement under oath over applicant's signature of his qualifications...." *McKnight v. State Land Board,* 14 Utah 2d 238, 381 P.2d 726, 730 (1963). Plaintiff argued another's application must lose priority because it omitted an oath of citizenship when filed. After discussing several types of oaths and their purposes,[6] the court stated, "The essentials of an oath are: 1. A solemn declaration. 2. Manifestation of an intent to be bound by the statement. 3. Signature of declarer. 4. Acknowledgment by *an* authorized person that oath was taken." *McKnight,* 381 P.2d at 734.

In contrast to the statute in *McKnight,* the acknowledgement statutes governing conveyances of interests in land in the spring of 1983 did not require any statement under oath by the representatives of Oakhills Partnership about their execution

of the instrument we have determined is a legal mortgage.[7] Conveyances in writing were to be "acknowledged or proved" and certified in the manner provided by the statutes. Utah Code Ann. § 57–2–1 (1986). *See also* Utah Code Ann. § 57–1–6 (1986) (in order to operate as notice to third parties, instrument "shall be proved or acknowledged and certified ...").

A person acknowledging the execution of an instrument appears before an authorized officer and in some manner admits the fact of execution, with a view to giving the instrument authenticity. *See* 1 Am. Jur.2d *Acknowledgments* § 29 (1962). Under our statutes, the acknowledgment or proof could be taken by one of several officers, including a notary public, Utah Code Ann. § 57–2–2 (1986), who was then required to make a certificate thereof and endorse it on or annex it to the instrument of conveyance. Utah Code Ann. § 57–2–5 (1986). Where the person making the acknowledgment was personally known to the officer to be the person whose name was subscribed to the conveyance, no sworn oath or affirmation of a third party regarding the identity of the acknowledging person was necessary. *See* Utah Code Ann. §§ 57–2–6, –8 (1986). In such a case, the officer's certificate of acknowledgment was permitted to be in substantially the following form:

State of Utah, County of _____

On the \_\_\_\_ day of _____, 19\_\_, personally appeared before me _____, the signer of the above instrument, who duly acknowledged to me that he executed the same.

---

6. The purpose of an oath is to avoid a violation of a pledge or promise. It is to become secure against profanation or corruption, or breach. In its broadest form the term "oath" is used to include all forms of attestation by which one signifies that he is bound in good faith to perform what is demanded by the oath faithfully and truly. It does not include those forms of the attestation which are not accompanied by an imprecation.
*McKnight,* 381 P.2d at 733–34.

7. The instrument in this case was executed by a partnership. The certificate of acknowledgment of an instrument executed by a corporation,

however, was required to be substantially in the statutory form found in the second part of Utah Code Ann. § 57–2–7 (1986), which specifically refers to the person executing the document as swearing or affirming to his or her corporate officer or agent status and to the source of authorization to sign the instrument on the corporation's behalf. The acknowledgment statutes, Utah Code Ann. §§ 57–2–1 through –9 (1986) were recently repealed by Utah Laws 1988, ch. 155, § 24 (effective July 1, 1988). The current comparable provisions can be found at Utah Code Ann. §§ 57–2a–1 through –7 (1988).

Utah Code Ann. § 57-2-7 (1986).[8] The statutory form does not require the certificate to state affirmatively that the person making the acknowledgment is personally known to the officer. *Cf. In re New Concept Realty & Dev., Inc.*, 107 Idaho 711, 692 P.2d 355 (1984).

■ The trial court found that the signers and their relationships to Oakhills and its general partner were personally known to the notary public, who had taken their acknowledgments many times. The notary's certificate of acknowledgment recites that the two named signers appeared before him and stated their positions in Oakhills Partnership's general partner, their authority to sign the document on behalf of the limited partnership and for the general partner, and the fact that they acknowledged the execution of the instrument by the limited partnership.

The certificate thus complies with the statutory requirements and was sufficient to require acceptance of the instrument for recording under Utah Code Ann. § 57-3-1 (1986). As a properly acknowledged and recorded mortgage, the instrument imparted notice of its contents to third parties as of the recording date, April 8, 1983.[9] *See* Utah Code Ann. § 57-1-6 (1986); Utah Code Ann. § 57-3-2 (1986).

We now examine the issue of priority between Mast's mechanics' liens and American's mortgage lien. Utah Code Ann. § 38-1-3 (1988) specifies the circumstances in which those persons rendering services, performing labor, or furnishing materials in certain construction projects are given mechanics' liens on the construction property. In determining the priority among competing liens against the same property,

another section of the statute makes clear that the date of recording a notice of a mechanics' lien, prescribed by Utah Code Ann. § 38-1-7 (1988), is not conclusive. Instead, the mechanics' liens

> shall relate back to, and take effect as of, the time of the commencement to do work or furnish materials on the ground for the structure or improvement, and shall have priority over any lien, mortgage or other encumbrance which may have attached subsequently to the time when the building, improvement or structure was commenced, work begun, or first material furnished on the ground; also over any lien, mortgage or other encumbrance of which the lien holder had no notice and which was unrecorded at the time the building, structure or improvement was commenced, work begun, or first material furnished on the ground.

Utah Code Ann. § 38-1-5 (1988). Under this provision, a properly recorded mortgage has priority over a mechanics' lien arising from the furnishing of labor or materials that commenced *after* the mortgage recordation. *See Utah Savings & Loan Ass'n v. Mecham*, 12 Utah 2d 335, 366 P.2d 598, 602 (1961).

Mast asserted at trial that work commenced on the Oakhills Condominium project on April 6, 1983, two days before the recording of American's instrument. Hammons, president of Electro Technical Corporation, testified he placed a temporary power panel and pole, a coil of electrical wire, and some conduit at the building site on April 6. Ron Mast and Roger Mast claimed to have seen these materials when

---

**8.** The substance of what it means to acknowledge execution of a document before a notary or other authorized officer in particular circumstances, such as on behalf of a partnership or corporation, is now set forth in Utah Code Ann. § 57-2a-2(1) (1988).

**9.** We reject appellants' assertion, supported only by superficial legal analysis, that omission of the amount and date of the note rendered the instrument recorded "void" because it could not impart constructive notice of American's mortgage lien under Utah Code Ann. § 57-1-6 (1986) and Utah Code Ann. § 57-3-2 (1986). The clear

references in the mortgage to the separate note and construction loan agreement, along with the names and addresses of Oakhills and American, were adequate to put prudent subsequent lienors on inquiry notice which, if pursued, would lead to actual notice of the amount and terms of the indebtedness. *See Johnson v. Bell,* 666 P.2d 308 (Utah 1983). *See also Commercial Factors of Denver v. Clarke & Waggener,* 684 P.2d 261, 263 (Colo.Ct.App.1984); *Air Flow Heating & Air Conditioning, Inc. v. Baker,* 326 So.2d 449, 451 (Fla.Ct.App.1976), *cert. denied,* 341 So. 2d 289 (Fla.1976).

visiting the project site on or about April 8, 1983. The trial court, however, obviously disbelieved the witnesses' testimony, entering a specific finding that "[n]o work commenced and no materials were furnished at the Oakhills site prior to April 8, 1983."

Once again, appellants are attempting to challenge this finding by rearguing the evidence. *See Ashton,* 733 P.2d at 150. Under the "clearly erroneous" standard of review, we must give due regard to the trial court's opportunity to judge the credibility of the witnesses. Utah R.Civ.P. 52(a). We cannot set aside a trial court's finding of fact unless it is against the clear weight of the evidence or we otherwise reach a definite and firm conviction that a mistake has been made. *Western Kane County Special Serv. Dist. No. 1 v. Jackson Cattle Co.,* 744 P.2d 1376, 1377 (Utah 1987). Mast has not demonstrated either to us.

Hammons testified he placed the temporary power panel at the top of the project site behind a pile of debris. Roger Mast, however, testified the panel was in a clear spot—not near any debris—considerably to the left of where Hammons said he placed it. Hammons filed a notice of lien stating Electro Technical Corporation's work on the project began May 6, 1983, which is the same date its written subcontract with Mast Construction Company was signed. Electro Technical Corporation's first application for payment identified May 9, 1983, as the first day of the project work period. Mast Construction Company filed a notice of lien signed by its president, Ron Mast, giving April 28, 1983, as the date work commenced on the project. In its April 1986 response to interrogatories, Mast Construction Company identified April 18, 1983, as the date work commenced, and described that work as clearing the site, with no mention of any temporary power equipment being left there earlier. Finally, photographs of the work site taken during the second half of April 1983 revealed no panel. Commenting on the inconsistent evidence, the trial court observed:

I also note with some interest that this power pole seems to evade having its picture taken, and it always seems to be just outside the range of the photographs. There is some substantial confusion on the part of the lien claimants as to where this power pole was placed.

If it was placed as Mr. Hammons said, it's to the left side of the pile of [refuse]. And Mr. Mast as I recall testified it was on the right-hand side. And that's all shown in the grading plan that was marked as an exhibit and received. I'm surprised it didn't get photographed one way or another.

■ The lower court thus questioned the credibility of the mechanics' lien claimants' self-serving testimony and weighed it against their prior inconsistent actions and written statements. It is not our function to second-guess the trial court as factfinder where there is a dispute in the evidence. The finding that no work was begun on or materials furnished to the project before the recording of American's mortgage on April 8, 1983, is not clearly erroneous.[10] The trial court correctly concluded that American's lien took priority over all other liens subsequent to that date.

We have considered the other issues raised by appellants and find them equally meritless. The judgment of the trial court is affirmed.

DAVIDSON and BENCH, JJ., concur.

---

10. In light of this determination, we do not reach the issues of whether placement of this temporary power equipment at the project site would be lienable work under section 38–1–3 and, if so, whether it would have provided sufficient notice to constitute the "commencement of work" under section 38–1–5.