INTERSTATE LAND CORPORATION,
Plaintiff and Appellee,

v.

R.D. PATTERSON, Defendant
and Appellant.

Melvin E. INGERSOLL, Marian Beverly Ingersoll, Leland R. Ingersoll and Evelyn E. Ingersoll, Plaintiffs in Intervention and Appellants,

v.

INTERSTATE LAND CORPORATION
and R.D. Patterson, Defendants in
Intervention.

No. 890280–CA.

Court of Appeals of Utah.

Aug. 8, 1990.

---

Ronald C. Barker (argued), Larry L. Whyte, Salt Lake City, for appellants.

Patrick J. O'Hara (argued), Salt Lake City, for appellee.

Before DAVIDSON, GARFF and JACKSON, JJ.

## OPINION

GARFF, Judge:

Appellant R.D. Patterson appeals the trial court's summary judgment order quieting title to a piece of property in favor of appellee Interstate Land Corporation (Interstate). Appellants Melvin E. Ingersoll, Marian Beverly Ingersoll, Leland R. Ingersoll, and Evelyn E. Ingersoll (the Ingersolls) appeal the trial court's order denying their motion to intervene in this case. We affirm.

The property at issue in this case, the vacated street property, comprises about one-half acre of land located on the west half of Glendale Avenue and the south half of First South, west of 1100 West, in Salt Lake City. The Ingersolls and LeMel Corporation (LeMel), the Ingersolls' closely-held corporation, purchased property abutting these two streets on July 6, 1977 from General Brewing Co. (General Brewing) by

means of a trust deed securing their note for $1,800,000. Each of the four Ingersolls and LeMel owned an undivided one-fifth interest in the property described in the trust deed.

Approximately three months later, on October 5, 1977, Salt Lake City Corporation (Salt Lake City) passed two ordinances which vacated the street property. Almost immediately thereafter, Salt Lake City passed an ordinance undoing the vacation. This ordinance was resisted by various parties, including Mountain Fuel Supply. On December 14, 1977, Salt Lake City filed an action against Mountain Fuel Supply for the purpose of determining ownership of the street property. LeMel and the four Ingersolls subsequently filed a motion to intervene in the lawsuit. The trial court granted their motion, allowing them to join the case as parties plaintiff against Mountain Fuel, and to adopt Salt Lake City's complaint. The trial court also granted their motion to file an amended complaint, which expressly identified the vacated street property and sought judgment against Mountain Fuel. On September 10, 1982, the trial court ruled that the Ingersolls had no interest in the vacated street property with respect to Mountain Fuel Supply. The Ingersolls did not appeal this ruling. Subsequently, in late 1982, the trial court held that Salt Lake City's ordinances vacating the street property were valid, and that title to the property vested in the abutting landowners.

On July 27, 1979, LeMel quit-claimed to R.D. Patterson its one-fifth interest in the vacated street property. Patterson did not immediately record this quit-claim deed.

Subsequently, the Ingersolls and LeMel defaulted on the $1,800,000 note secured by the trust deed. General Brewing Co. appointed Richard L. Blanck as the successor trustee under the trust deed. On September 7, 1979 and again on October 22, 1979, Blanck filed notices of default against LeMel and the Ingersolls. These notices of default contained descriptions of the original trust deed property, but did not contain a description of the vacated street property.

LeMel filed a petition for chapter 11 bankruptcy on May 6, 1980, which was converted to a chapter 7 proceeding on September 23, 1981, and closed on April 3, 1986. Also on May 6, 1980, the Ingersolls quit-claimed their interest in the property described in the trust deed to LeMel. This quit-claim deed did not include a description of the vacated street property.

On March 11, 1982, nearly two years after LeMel filed its petition in bankruptcy, Patterson recorded LeMel's July 27, 1979 quit-claim deed.

NACM Intermountain, Inc. (NACM) became the acting trustee of LeMel's bankruptcy estate. On May 27, 1982, the bankruptcy court authorized NACM to sell the property described in the trust deed back to General Brewing, along with the vacated street property. The order indicated that it was the bankruptcy trustee's intention "to sell all the real property in which the Debtor held an interest and that the property description in the Trustee's Notice had erroneously omitted describing certain contiguous portions of vacated First South Street west of 1100 West Street and Glendale Street north of First South Street in which the estate may have an interest." Consequently, on June 3, 1982, NACM conveyed all of LeMel's interest in the property, including the vacated street property, to General Brewing.

On February 7, 1984, General Brewing conveyed the trust deed property and the vacated street property to Interstate by special warranty deed. A year later, on February 7, 1985, Interstate brought the present action against Patterson, seeking to quiet title to the vacated street property. After Interstate moved for summary judgment against Patterson, the Ingersolls sought to intervene in the action, claiming

that they also had an interest in the vacated street property.

On July 28, 1986, the trial court granted Interstate's motion for summary judgment against Patterson and denied the Ingersolls' motion to intervene, finding that Patterson had no right in the property described in the LeMel quit-claim deed because LeMel had no interest in that property at the time the deed was recorded on February 14, 1984.

Patterson and the Ingersolls subsequently moved to correct the order or, in the alternative, for a new trial pursuant to rule 59 of the Utah Rules of Civil Procedure, and attempted to join the Ingersolls as parties. The trial court found, however, that their motion was not properly filed under rule 59 and denied the motion. Patterson and the Ingersolls brought this appeal.

On appeal, the parties raise the following major issues: (1) Was appellants' notice of appeal timely filed following their rule 59 motion? (2) Did the trial court err in holding that a rule 59 motion may not be brought following a summary judgment? (3) Which of the parties own the vacated street property? (4) Did the trial court err in refusing to allow the Ingersolls to intervene?

## TIMELY FILING OF APPEAL

Interstate alleges that appellants failed to file a notice of appeal within thirty days after the court's entry of the final order under the following facts. The court denied the Ingersolls' motion to intervene and granted Interstate's motion for summary judgment against Patterson on September 4, 1986. Within ten days, appellants filed a motion for correction of the order or for a new trial, relying on rule 59 of the Utah Rules of Civil Procedure.[1] On December 2,

---

1. Relevant portions of rule 59 of the Utah Rules of Civil Procedure state:

(a) Grounds. Subject to the provisions of Rule 61, a new trial may be granted to all or any of the parties and on all or part of the issues, for any of the following causes; provided, however, that on a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take

additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment:

(1) Irregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion by which either party was prevented from having a fair trial.

1986, the trial court found that appellants' rule 59 motion was not authorized by the Utah Rules of Civil Procedure and affirmed the prior order. On December 30, 1986, more than three months after the entry of the final order but only twenty-eight days after the ruling on appellants' rule 59 motion, appellants filed their notice of appeal.

■ The trial court found that appellants brought their rule 59 motion improperly because it was really a motion for reconsideration, to which rule 59 was inapplicable. The court reasoned that a rule 59(a) motion was only intended to follow a full evidentiary trial, not a summary judgment, and that such a motion was not intended for the wholesale challenge of the judgment better brought by an appeal.

This court, in *Moon Lake Elec. Ass'n v. Ultrasystems W. Constructors, Inc.,* 767 P.2d 125 (Utah Ct.App.1988), held that a rule 59 motion for a new trial is procedurally correct following a summary judgment. The court stated:

> "[t]he concept of a new trial under Rule 59 is broad enough to include a rehearing of any matter decided by the court without a jury." While there may be some logic in concluding that there can be no new trial where no trial has yet occurred, we should be less concerned with what this "reconsideration" procedure may be called so long as the procedure is available to litigants.

*Id.* at 127–28 (quoting 11 A. Wright & C. Miller, Federal Practice and Procedure § 2804 (1973) (footnote omitted). Because *Moon Lake* is controlling, we resolve this issue in favor of appellants and hold that they appropriately brought their rule 59(a) motion following summary judgment.

■ Because the trial court denied appellants' rule 59 motion, Interstate argues that their time to file a notice of appeal began to run immediately following entry of the order granting Interstate's summary judgment motion, and that the unsuccessful rule 59 motion did not toll the time to file the notice of appeal. Therefore, Interstate concludes that appellants' notice of appeal was untimely filed.

This conclusion is not well taken. The Utah Supreme Court has determined that a timely rule 59 motion tolls the time for an appeal of a judgment, stating that the "[t]ime for appeal does not begin to run again until the order granting or denying such a motion is entered." *Hume v. Small Claims Court of Murray City,* 590 P.2d 309, 311 (Utah 1979); *see also Vreeken v. Davis,* 718 F.2d 343, 346 (10th Cir.1983) (the filing of a rule 59(e) motion tolls the time for appeal until the district court rules on the motion). "The effect of denying such a motion is to reinstate the original judgment, and a timely appeal taken therefrom is in reality an appeal from that original judgment." *Hume,* 590 P.2d at 311.

Because appellants filed their appeal within thirty days of December 2, 1986, the date upon which the trial court denied their rule 59 motion, we hold that their appeal was timely filed.

### OWNERSHIP OF DISPUTED PROPERTY

Appellants argue that they have an interest in the vacated street property through the trust deed by which they acquired the adjacent property, through the chain of title, and through adverse possession.

---

(2) Misconduct of the jury; and whenever any one or more of the jurors have been induced to assent to any general or special verdict, or to a finding on any question submitted to them by the court, by resort to a determination by chance or as a result of bribery, such misconduct may be proved by the affidavit of any one of the jurors.

(3) Accident or surprise, which ordinary prudence could not have guarded against.

(4) Newly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial.

(5) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice.

(6) Insufficiency of the evidence to justify the verdict or other decision, or that it is against law.

(7) Error in law.

(b) Time for motion. A motion for a new trial shall be served not later than 10 days after the entry of the judgment.

*Trust Deed*

██ The Ingersolls argue that they acquired the vacated street property through the operation of the trust deed in that, under the trust deed, they became record owners of both the property described in the trust deed and the after-acquired vacated street property, while the trustee only received a lien against the properties. They reason that trust deeds should be treated like mortgages on this issue because Utah has long been recognized as a "lien-theory" state, in which the legal title to mortgaged property remains in the mortgagor subject to a lien in favor of the mortgagee. *See Bybee v. Stuart,* 112 Utah 462, 189 P.2d 118, 122–23 (1948). Interstate opposes this view, asserting that after-acquired title automatically inures to the benefit of the trustee rather than to the trustor under the trust deed, making the trustee, rather than the trustor, the title holder of after-acquired property.

██ We agree with Interstate and reject the Ingersolls' attempt to treat trust deeds analogously with mortgages. A trust deed is "a deed executed in conformity with this act [Utah Code Ann. §§ 57–1–1 to –37 (1988)] and conveying real property to a trustee in trust to secure the performance of an obligation of the grantor or other person named in the deed to a beneficiary." *General Glass Corp. v. Mast Constr. Co.,* 766 P.2d 429, 432 (Utah Ct.App.1988) (cert. denied 109 Utah Adv. Rep. 39 (Utah 1989) (quoting Utah Code Ann. § 57–1–19(3) (Supp.1986)). The Utah Supreme Court, in *First Security Bank v. Banberry Crossing,* 780 P.2d 1253 (Utah 1989), stated that a

> trust deed is similar to a mortgage in that it is given as security for the performance of an obligation. However, a trust deed is a conveyance by which title to the trust property passes to the trustee. Upon default, the trustee has power to sell the property to satisfy the trustor's debt to the beneficiary.

*Id.* at 1256 (footnote omitted); *see also General Glass Corp.,* 766 P.2d at 432 (although a trust deed, like a mortgage, is given as security for the performance of an obligation, it is unlike a mortgage, which is not a title-conveying instrument, in that it is a conveyance in which title to the trust property passes to the trustee). In the present case, Salt Lake City vacated street property abutting the trust property. The trial court in the Salt Lake City case ruled that title to the property vested in the abutting landowners. At all times pertinent to this occurrence, under *Banberry Crossing* and *General Glass Corp.,* the trustee held title to the trust property. We see no reason to distinguish between property acquired under a trust deed and after-acquired property such as the vacated street property, so we find that the trustee, as the abutting landowner, also acquired title to the vacated street property under the trust deed.

*Chain of Title*

██ Appellants base their chain of title claim to the vacated street property on the following reasoning. Because LeMel conveyed its ⅕ interest in the vacated street property to Patterson prior to filing bankruptcy on May 6, 1980, and because the Ingersolls did not explicitly, in the May 6, 1980 quit-claim deed to LeMel, convey their ⅘ interest in the vacated street property, but only their interest in the abutting property, LeMel had no ownership interest in the vacated street property on May 27, 1982, when NACM resold the property described in the trust deed to General Brewing. Consequently, the trust deed was a nullity with respect to conveying title to the vacated street property, leaving appellants as owners of the vacated street property.

We disagree. Our analysis of the chain of title leads us to conclude that appellants have no interest in the vacated street property.

We first examine LeMel's ⅕ interest in the vacated street property. LeMel acquired its interest in this property through its joint purchase with the Ingersolls of the property described in the trust deed, and through Salt Lake City's subsequent vacation of the abutting portions of Glendale Avenue and First South Street. On July 27, 1979, LeMel quit-claimed its ⅕ interest

in the vacated street property to Patterson. Because, as we decided above, title to the vacated street property passed to the trustee, rather than to LeMel, upon Salt Lake City's vacation of the property, Patterson's quit-claim deed was subject to the trust deed on the property. *See Johnson v. Bell*, 666 P.2d 308, 312 (Utah 1983) ("A grantee under a quit claim deed acquires only the interest of his grantor.") When LeMel defaulted on the note secured by the trust deed and subsequently went into bankruptcy, whatever interest Patterson may have had in the property as a result of the quit-claim deed was lost.

The Ingersolls gained a ⅘ undivided interest in the vacated street property by the same means as LeMel: through the purchase of the trust deed property and then through Salt Lake City's vacation of the abutting street property. As we ruled above, title to the vacated street property vested in the trustee, making the Ingersolls' interest in the property subject to the trust deed. They subsequently defaulted on the note secured by the trust deed and, consequently, lost all interest in the vacated street property as well as the property originally described in the trust deed. As a result, the facts that the Ingersolls' May 6, 1980 quit-claim deed did not purport to convey their interest in the vacated street property to LeMel's bankruptcy estate, and that the vacated street property description was not included in the trustees' notice of default, are irrelevant in determining ownership of the vacated street property.

*Adverse Possession*

██ Appellants' third basis for claiming an interest in the vacated street property is adverse possession. They claim to have been in continuous, notorious, open possession of the property for the statutory period. Interstate asserts, however, that appellants cannot prove a prima facie case of adverse possession because they had not been occupying the vacated street property continously for seven years prior to the filing of Interstate Land's complaint on February 7, 1985.

██ To establish title by adverse possession, the claimant must have been in possession of the property "within seven years before the commencement of the action." *Grayson Roper Ltd. Partnership v. Finlinson*, 782 P.2d 467, 469 (Utah 1989). A party holding legal title to the property is presumed to be "in possession" of it. *Id.* at 469–70. We do not reach this issue, however, because the party claiming adverse possession also has the burden of "proving that possession was open, notorious, and hostile and that *taxes were paid for the entire statutory period." Marchant v. Park City*, 788 P.2d 520, 523–24 (Utah 1990) (emphasis added); *see also Grayson Roper Ltd. Partnership*, 782 P.2d at 471.

Neither Patterson nor the Ingersolls provide any evidence in the record to the effect that they paid property taxes on the vacated street property. Instead, one of the grounds upon which the trustee found the Ingersolls in default was their failure to pay property taxes for the years 1978 and 1979. Because appellants have failed to offer any evidence supporting this necessary element of adverse possession, we find that they have failed to state a prima facie case.

We conclude that appellants have no interest in the vacated street property and that it rightfully belongs to Interstate. Summary judgment was properly granted against appellants because they have alleged no genuine issues of material fact and Interstate is entitled to judgment as a matter of law.

INTERVENTION

██ Under rule 24(a) of the Utah Rules of Civil Procedure, a person has a right to intervene in an action

(1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the

applicant's interest is adequately represented by existing parties.

*See also Jenner v. Real Estate Servs.*, 659 P.2d 1072, 1073–74 (Utah 1983) (rule 24(a) permits intervention as a matter of right when the applicant will be adversely affected by the court's disposition of property). To intervene as of right, four requirements must be met: "(1) the application is timely, (2) the applicant has an interest in the subject matter of the dispute; (3) that interest is or may be inadequately represented; and (4) the applicant is or may be bound by a judgment in the action." *Lima v. Chambers*, 657 P.2d 279, 282 (Utah 1982); *see also Commercial Block Realty Co. v. United States Fidelity & Guar. Co.*, 83 Utah 414, 28 P.2d 1081, 1083 (1934) (For a party to intervene, "[h]e must have an interest in the matter in litigation, in the success of either of the parties, or an interest against both.") The applicant's interest in the subject matter of the dispute must be a direct claim upon the subject matter of the action such that the applicant will either gain or lose by direct operation of the judgment to be rendered, not a "mere, consequential, remote or conjectural possibility of being in some manner affected by the result of the original action." *Lima*, 657 P.2d at 282 (quoting *State v. Craig*, 364 S.W.2d 343, 346 (Mo.Ct.App.1963)). The test usually applied to the right to intervene is whether the person seeking to intervene may gain or lose by a direct legal operation and the effect of the judgment. *Commercial Block Realty Co.*, 28 P.2d at 1083.

Rule 24(b) states that a party may be permitted to intervene, in the court's discretion, "(1) when a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common."

 In exercising its discretion to permit a party to intervene, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. Utah R.Civ.P. 24(b). The test is whether the party's intervention "would unduly delay a pending action or if permitting him to intervene would unduly complicate the issues." *Houston Real Estate v. Hechler*, 44 Utah 64, 138 P. 1159, 1162 (1914).

 The Ingersolls argue that the trial court improperly denied their application to intervene because of their claimed interest in the vacated street property. Although the Ingersolls timely applied for intervention, we have determined that they have no direct or remote interest in the subject matter of the dispute, the vacated street property. Therefore, they may not intervene as of right in this matter. Further, because they have no interest in the subject matter of the dispute, they also have no basis for their claim that they have a question of law or fact in common with the main action. Consequently, they have no grounds for requesting permissive intervention. We, therefore, conclude that the trial court did not err in refusing to grant the Ingersolls' motion for intervention.

Although the parties have raised other issues, we do not address them because these issues are dispositive of the case. "We have discretion to determine which issues and claims properly raised on appeal merit a written analysis." *State v. Carter*, 776 P.2d 886, 888–89 (Utah 1989).

Affirmed.

DAVIDSON and JACKSON, JJ., concur.